United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JACQUELINE C. MELCHER,

Appellant,

v.

JOHN W. RICHARDSON, TRUSTEE,

Appellee.

Case No.  5:15-cv-04726-RMW
Bk. No. 01-53251

**ORDER DISMISSING BANKRUPTCY APPEAL FOR LACK OF STANDING**

Appellant Jacqueline C. Melcher appeals pro se from the bankruptcy court's September 23, 2015 order allowing transfer of royalties for the films *Caddyshack* and *Foul Play* to the Terrence Melcher probate estate (the "probate estate"). Appellee John W. Richardson, the bankruptcy trustee, argues that the bankruptcy court did not err and that in any event, appellant, the debtor in bankruptcy, lacks standing because the estate is insolvent. The court finds that oral argument in this matter is unnecessary pursuant to Bankruptcy Local Rule 8019-1. Because appellant has not shown that she has standing, the court dismisses the instant appeal.

I.      **BACKGROUND**

Ms. Melcher's bankruptcy case has been ongoing for approximately 14 years and has spawned multiple appeals. *In re Melcher*, No. BAP NC-14-1573-TADJU, 2015 WL 8161915, at *1 (B.A.P. 9th Cir. Dec. 7, 2015). Appellant was once married to Terrence Melcher, but the couple

1

separated in 1997, and after state court proceedings, the marriage dissolved. In 2001, after a California state court ordered appellant to sell a piece of real property in Massachusetts, appellant filed a chapter 11 bankruptcy petition. *See id.* In 2004, Terrence Melcher died, and the probate estate was left without payment of its legal fees. The probate estate became the largest creditor of appellant's bankruptcy estate. In 2008, the bankruptcy case was converted to chapter 7. *Id.* The trustee proceeded to liquidate the estate's assets to satisfy creditors.

The instant appeal involves royalties for the films *Caddyshack* and *Foul Play* that had been awarded to appellant during her divorce from actor Chevy Chase several decades ago, before she was married to Terrence Melcher. In June 2015, the trustee obtained the bankruptcy court's permission to hire a consultant to evaluate the royalties payable to the bankruptcy estate from these films. Dkt. No. 19 at ER0037. After receiving an appraisal, on August 25, 2015, the trustee filed a motion and a Notice of the Trustee's Intent to assign the rights and royalties from these two films to the probate estate in partial satisfaction of the probate estate's claims against the bankruptcy estate. Dkt. No. 19 at ER0040-54. The probate estate's claim against the bankruptcy estate was $4,200,000, of which, at the time, $3,273,873 remained due after the sale of real property in Massachusetts. *Id.* at ER0044. The August 25, 2015 Notice indicated that the royalties on *Caddyshack* and *Foul Play* had been appraised at approximately $143,900. Nevertheless, the trustee and the probate estate had negotiated that the film royalties would be deemed worth 15% of the probate estate's claim—approximately $630,000. *Id.* In addition to the film royalties, the August 25, 2015 Notice provided that the bankruptcy estate would make an additional $420,000 cash payment to the probate estate to cover an additional 10% of the probate estate's claim. *Id.* When all assets were distributed, the Notice estimated that the probate estate would receive approximately 47% of its total claim. *Id.* at ER0045. The Notice indicated that any party wishing to object should do so within 21 days, in this case, by September 15, 2015. *Id.*

Appellant disagreed with the trustee's valuation of the film rights. On September 15, 2015, appellant filed a request with the bankruptcy court for leave to file an opposition to the proposed assignment. Dkt. No. 19 at ER0055; Dkt. No. 20-5 at ECF p. 8. Appellant was required to request

United States District Court
Northern District of California

1    leave to leave to file an opposition, rather than simply filing an opposition, because the bankruptcy

2    court had issued an order requiring appellant to submit any proposed pleadings for pre-filing

3    review to curb her "continued and substantially meritless litigation," which had needlessly

4    consumed "[m]any of the assets of this bankruptcy estate." Dkt. No. 19 at ER0033. In her filing,

5    appellant asserted that *Caddyshack* had "consistently produced approximately $50,000 dollars

6    [sic] a year" and that over "ten years the Caddyshack film rights would be worth at a minimum of

7    half of a million dollars." Dkt. No. 20-5 at ECF pp. 13-14. Furthermore, appellant asserted, *Foul*

8    *Play* "produces between $5K and $10,000 a year." *Id.* The remaining 15 pages of appellant's

9    proposed opposition describe alleged misdeeds by the trustee and the probate estate that were

10    unrelated to the film royalties or the $420,000 payment. *See id.* at ECF pp. 15-29

11      On September 22, 2015, the bankruptcy court denied appellant's request for leave to file an

12    opposition to the proposed assignment. Dkt. No. 19 at ER0057. The bankruptcy court found that

13    "the Opposition does not have any merit and it is duplicative of prior filings on which the court

14    has previously ruled."[1] *Id.* at ER0058. On September 23, 2015, the bankruptcy court issued an

15    order authorizing the assignment of the film royalty rights in satisfaction of 15% of the probate

16    estate's claim and the payment of the $420,000 in satisfaction of an additional 10%. Dkt. No. 19 at

17    ER0060. After the bankruptcy court denied appellant's motion for reconsideration, the instant

18    appeal followed.

19    **II.**      **ANALYSIS**

20      On appeal, appellant renews her argument that the trustee undervalued the film royalties,

21    but, before the court can address the merits of appellant's arguments, it is appellant's burden to

22    show that she has standing. "To have standing to bring this appeal, appellant must demonstrate

23    that she was directly and adversely affected pecuniarily by the order of the bankruptcy court."

24    *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983). "[A] hopelessly insolvent debtor does not

25

26    [1] On December 7, 2015, the bankruptcy court modified the pre-filing order in accordance with

27    instructions from the Bankruptcy Appellate Panel such that the order no longer required the bankruptcy court to evaluate the merit of appellant's proposed filings during screening. *See* Bankr. Dkt. No. 3905; *In re Melcher*, 2015 WL 8161915, at *5.

28

United States District Court
Northern District of California

1    have standing to appeal orders affecting the size of the estate. Such an order would not diminish

2    the debtor's property, increase his burdens, or detrimentally affect his rights." *Id.* at 442 (internal

3    citations omitted). *See also Turner v. Cook*, 362 F.3d 1219, 1225–26 (9th Cir. 2004) (dismissing

4    Turner's appeal for lack of standing in a case unrelated to his bankruptcy because "[w]hen Turner

5    declared bankruptcy, all the 'legal or equitable interests' he had in his property became the

6    property of the bankruptcy estate and are represented by the bankruptcy trustee") (citing 11 U.S.C.

7    § 541(a)(1)); *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994) (noting that "Eisen, as a debtor,

8    has no standing because Moneymaker, as trustee, is the representative of Eisen's estate").

9          Based on the record before this court, appellant has not demonstrated that she has standing.

10   The trustee contends that the estate is insolvent and that, accordingly, appellant does not have a

11   pecuniary interest in the estate or in the disposition of any asset of the estate. In support of his

12   argument, the trustee points to the August 25, 2015 Notice. That document explained that the

13   probate estate's remaining claim was $3,272,827 and that the bankruptcy estate's remaining assets

14   were approximately $1.1 million in cash plus the royalties for *Caddy Shack* and *Foul Play*. Dkt.

15   No. 19 at ER0044. According to the Notice, "The previous distribution of sale proceeds, the

16   proposed cash distribution, and the assignment of the royalties together will constitute a 47 percent

17   distribution on the Probate Estate's claim" *Id.*at ER0045. Moreover, "Higher priority Chapter 7

18   administrative expense claims (partly approved, partly not approved) total between $500,000 and

19   $600,000." *Id.*at ER0044. In other words, after administrative expenses are paid and the

20   bankruptcy estate's largest creditor receives a fraction of the amount owed by the bankruptcy

21   estate,[2] there will be nothing left in the bankruptcy estate for appellant or anyone else.

22         While this court is unaware of whether the bankruptcy court has made an explicit finding

23   that the estate is insolvent, appellant has raised no evidence or argument to avoid a finding that the

24

25   _____
     [2] While the court need not address the merits of appellant's argument due to the court's ruling on
26   standing, the court notes that notwithstanding the $143,900 appraisal, the probate estate has
     deemed the film royalties the equivalent of a $630,000 payment, i.e., 15% of the total owed. Dkt.
27   No. 19 at ER0060. This figure is consistent with the highest figure appellant has claimed the
     royalties are worth. Dkt. No. 20-5 at ECF pp. 13-14. On appeal, appellant claims that an unnamed
     entity offered to pay only $200,000 for the royalties to *Caddyshack*. Dkt. No. 17 at 5.

28

4

bankruptcy estate will not have sufficient resources to provide her with a recovery.[3] Nor has appellant cited any authority indicating that a debtor has standing under circumstances analogous to her own. Because the estate is hopelessly insolvent, this court finds that appellant would not benefit economically if the order approving the transfer of royalties were reversed. Accordingly, appellant lacks standing to pursue this appeal.

**III.     ORDER**

        For the reasons set forth above, this appeal is DISMISSED.

        **IT IS SO ORDERED.**

Dated: September 30, 2016

_Ronald M. Whyte_
_____
Ronald M. Whyte
United States District Judge

---

[3] This court also found in a related appeal that Ms. Melcher lacked standing because the bankruptcy estate is insolvent. Case No. 5:15-cv-06134-RMW, Dkt. No. 64 at 4-5.

5

5:15-cv-04726-RMW
ORDER DISMISSING BANKRUPTCY APPEAL FOR LACK OF STANDING
RS